AO 106 (Rev. 01/09)  Application for a Search Warrant

**SEALED**

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT

### for the
### Western District of Virginia

JUN 1 9 2014

JULIA C. DUDLEY, CLERK
BY: *s/ J. Clark*
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| 18278 Brumley Gap Road | ) |
| Abingdon, VA | ) |
| | ) |

Case No.  1:14MJ166

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location)*: 18278 Brumley Gap Road, Abingdon, VA (to include the residence, curtilage, outbuildings, persons present, and vehicles present.) Attachment A consists of aerial photograph of the residence.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __21__ U.S.C. § __846/841(a)(1)__ , and the application is based on these facts:  See Attachment C                                and/or    841(a)(1)

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  6/19/14

_____
*Judge's signature*

City and state:    Abingdon, Virginia

Pamela Meade Sargent, USMJ
*Printed name and title*

ATTACHMENT  A



18278 Brumley Gap Road, Abingdon, VA

ATTACHMENT B

1.  Methamphetamine laboratory precursors, chemicals, and equipment (and original packaging of same) including the following: pseudoephedrine, ammonium nitrate (e.g. instant cold packs), lithium (e.g. batteries containing lithium), sodium hydroxide (e.g. Red Devil Lye), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel, lighter fluid), muriatic acid, sulfuric acid, table salt, aluminum foil, plastic soda bottles (empty or no longer containing original contents), glass mason jars, plastic food storage containers, Ziplock-type plastic bags, plastic tubing, electrical tape and/or duct tape, coffee filters, pipe cutters (used to cut open lithium batteries), electric hot plates/electric skillets, frying pans, razor blades, digital scales, funnels, and stirring utensils.

2.  Unidentified powders (processed/semi-processed precursors, chemicals).

3.  Glass jars and plastic bottles/storage containers filled with unidentified liquids or sludges (processed/semi-processed precursors and other unidentified mixtures related to the manufacturing of methamphetamine)

4.  Devices used to communicate with methamphetamine manufacturing co-conspirators including cellular telephones, pagers, and two-way radios; electronic equipment used for counter-surveillance to include scanners, anti-bugging devices, and video surveillance cameras..

5.  Firearms, including but not limited to handguns, rifles, and shotguns that are commonly used by individuals to protect clandestine methamphetamine manufacturing related operations and controlled substances.

6.  Books, receipts, ledgers, notes, and videos pertaining to the illicit manufacturing of methamphetamine and the purchasing, transporting, and preparation of methamphetamine precursors, chemicals, and equipment.

7.  Messages/letters, telephone numbers, and addresses relating to the illicit manufacturing of methamphetamine and the purchasing, transporting, and preparation of methamphetamine precursors, chemicals, and equipment. These messages/letters, telephone numbers, and addresses may be written on personal calendars, personal address and /or telephone books, Rolodex type indices, notebooks, loose pieces of paper, and found in mail.

8.  Photographs and videos depicting persons involved with/engaged in the manufacturing/use of methamphetamine and/or the purchasing, preparing, and storing of methamphetamine laboratory precursors, chemicals, and equipment.

ATTACHMENT B (Continued)

9.  Items or articles of personal property tending to show ownership, dominion, or control of the premises/property/vehicles.  Such items or articles include (but are not limited to) personal identification, personal correspondence, diaries, checkbooks, notes, photographs (including digital), keys, receipts, personal telephone and address books, videos, and motor vehicle related documents (titles/registrations).

10. Items listed in Paragraphs 6 through 9 may be stored in digital media.  Therefore, digital media (including but not limited to computers/computer hard drives, floppy disks, CD's, flash/jump drives, personal digital assistants (PDA's), cellular telephones, digital cameras, iPODs, iPADs, etc.) are to be seized and examined for the items listed in Paragraphs 6 through 9.

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for the premises known as 18278 Brumley Gap Road, Abingdon, VA. This affiant, after obtaining and reviewing information, believes there is evidence of conspiracy to manufacture methamphetamine and/or manufacturing methamphetamine at 18278 Brumley Gap Road, Abingdon, VA in violation of 21 USC 846/841(a)(1) and 841(a)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (23) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. I am a graduate of both the DEA's Clandestine Laboratory Investigation/Safety Certification Program and the DEA's Clandestine Laboratory Site Safety Officer School. I have participated in the execution of more than (300) narcotics related search warrants and the seizure and dismantling of more than (200) clandestine methamphetamine laboratories. I have testified as an expert on multiple occasions in Federal Court and State Court regarding the clandestine manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of my personal participation and information provided to this affiant by other law enforcement officers.

5. The manufacturing of methamphetamine (a Schedule II Controlled Substance) by way of the ammonium nitrate/lithium metal method (also known as the "shake and bake" or "one pot" method) requires pseudoephedrine/ephedrine (obtained through the processing of cold/allergy pills, tablets, gelcaps, and liquids containing pseudoephedrine or ephedrine), ammonium nitrate (found in instant cold packs), and lithium metal (found in lithium batteries). Other chemicals/ingredients commonly used during the ammonium nitrate/lithium metal method include sodium hydroxide (e.g. Red Devil Lye), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel, lighter fluid), acetone, muriatic acid, sulfuric acid, table salt, and aluminum foil. Equipment/tools commonly used during the manufacturing of methamphetamine include soda bottles, glass mason jars, plastic food storage containers, plastic tubing, electrical tape and/or duct tape, coffee filters, pipe cutters (often used to open lithium batteries), Ziplock-type plastic bags, frying pans/electric skillets/propane burners (to dry the methamphetamine), razor blades, digital scales, funnels, and stirring utensils.

6. Individuals who manufacture methamphetamine usually use and sell/trade the methamphetamine they manufacture. These manufacturers routinely have other persons (hereafter referred to as "shoppers") assist them in the purchasing of precursors, chemicals, and equipment/supplies needed to manufacture methamphetamine. Manufacturers will regularly pay shoppers in methamphetamine (to use and sell) and/or cash for their assistance.

7. Randall Wise routinely operates a red Ford Ranger pickup with Virginia license plates WPE-4042 (subject vehicle is hereafter referred to as "red Ford Ranger pickup"), and regularly parks said red Ford Ranger pickup at his residence. Although law enforcement has noted that Wise is the primary operator of this red Ford Ranger pickup, Justin Whitehead has been observed by law enforcement on (2) or (3) occasions during May/June 2014 driving the red Ford Ranger pickup.

8. During March 2014, a subject in Washington County, VA was arrested and found to be in possession of coffee filters with methamphetamine. This subject advised law enforcement that he/she obtained the methamphetamine from Justin Whitehead. The subject further stated that Whitehead was a methamphetamine manufacturer.

9. This affiant recently reviewed pseudoephedrine sales data provided by a number of retailers (as required under The Combat Methamphetamine Epidemic Act of 2005) and instant cold pack (ammonium nitrate) and lithium battery sales data maintained by a retailer in the Bristol, Virginia area. The data revealed the following:

- Wise attempted to purchase a (46) day supply of pseudoephedrine during a (24) day period in November/December 2013.

- Wise attempted to purchase a (42) day supply of pseudoephedrine during a (29) day period in December 2013/January 2014.

- Whitehead attempted to purchase a (45) day supply of pseudoephedrine during a (27) day period in January 2014.

- Wise attempted to purchase a (44) day supply of pseudoephedrine during a (26) day period in February/March 2014.

- On 03-06-2014, Wise purchased a (12) day supply of pseudoephedrine. On this same date, the red Ford Ranger pickup was utilized by a man and a woman to purchase coffee filters and lithium batteries from a retail store in the Bristol, VA area.

- On 03-10-2014, Whitehead purchased a (10) day supply of pseudoephedrine.

- On 04-08-2014, a Ford Ranger pickup, red in color, was utilized to purchase a cold pack and lithium batteries from a retail store (the same store referenced in the 03-06-2014 transaction listed above) in the Bristol, VA area. Store employee(s) believed the license plate on the Ford Ranger was WPE-4842. [This affiant believes that the employee(s) misread the license plate as Virginia Department of Motor Vehicle records reflect that license plate "WPE-4842" is assigned to a blue Chevrolet pickup registered to an individual near Richmond,

VA.  This affiant believes that the Ford Ranger pickup utilized on 04-08-2014 was the red Ford Ranger pickup routinely operated by Randall Wise and that the store employee(s) misread the "0" on the license plate for an "8".]

- On 04-19-2014,  Whitehead purchased a (10) day supply of pseudoephedrine.

- On 05-02-2014,  Wise purchased a (10) day supply of pseudoephedrine.

- On 05-08-2014,  Whitehead purchased a (10) day supply of pseudoephedrine.

- On 05-17-2014,  Wise purchased a (12) day supply of pseudoephedrine.  Wise utilized the red Ford Ranger pickup to travel to the pharmacy and perform this purchase (this affiant reviewed the pharmacy/retail store security video camera footage – of both inside the store and of the parking area -  related to this purchase).

- On 05-23-2014,  Wise purchased a (10) day supply of pseudoephedrine. Whitehead also purchased a (10) day supply of pseudoephedrine on this same date.

- On 06-04-2014,  Wise purchased a (10) day supply of pseudoephedrine.  On this same date, two individuals utilized the red Ford Ranger pickup to purchase lithium batteries and an instant cold pack.  [During the night of 06-04-2014, law enforcement observed the red Ford Ranger pickup parked at Whitehead's residence].

- On 06-13-2014,  Whitehead purchased a (5) day supply of pseudoephedrine.

10. Pseudoephedrine, ammonium nitrate (from instant cold packs), and lithium (from lithium batteries) are primary ingredients in the manufacturing of methamphetamine via the ammonium nitrate/lithium metal method.  During the last several years, this affiant has routinely found and seized (via search warrants and consent searches) the aforementioned ingredients (and packaging of same) at methamphetamine manufacturing/precursor preparation sites.  This affiant has encountered and seized these ingredients at such sites in various forms/stages (e.g. sludges/mixed with liquids) related to methamphetamine production and contained in a variety of glass and plastic containers days, weeks, and even months after the ingredients were purchased at pharmacies/retail stores.

11. On 06-13-2014, law enforcement observed Wise as a passenger in a vehicle being driven by a convicted methamphetamine manufacturer.  Another passenger observed in the vehicle was and is currently out on bond pursuant to her May 2014 methamphetamine manufacturing related arrest.

12. A review of Wise's criminal history revealed a 2011 charge of Possession of a Controlled Substance.  The charge was subsequently dismissed.  A review of Whitehead's criminal history revealed Whitehead's 2009 felony conviction for Possession of a Schedule I or II Controlled Substance, his 2009 misdemeanor conviction for Possession of a Schedule III Controlled Substance, and his 2013 misdemeanor conviction for Possession of Controlled Substances.

13. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that individuals who illegally manufacture methamphetamine and/or conspire to do so typically maintain methamphetamine manufacturing precursors/chemicals/equipment (as described in paragraph #5 above) along with receipts / notes / records / telephone numbers (as they pertain to manufacturing/conspiracy to manufacture), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons, inside their residences, garages, outbuildings/barns, campers, vehicles (or the vehicles they operate), and inside of vehicles registered to other persons when those vehicles are parked at the manufacturer's/conspirator's residence/property.

14. Individuals who manufacture methamphetamine and/or conspire to do so routinely have persons who are methamphetamine users and/or additional co-conspirators (i.e. shoppers) present at their residences/properties.  These users/co-conspirators often illegally possess methamphetamine and methamphetamine use paraphernalia and routinely possess notes, stored telephone numbers, and messages pertaining to their relationships with methamphetamine manufacturers / manufacturing co-conspirators.   These users/co-conspirators are oftentimes in possession of other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) and possess these items on their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked at the drug manufacturer's/co-conspirator's residences/properties.

15. The clandestine manufacturing of methamphetamine is an extremely dangerous process that involves the use of toxic, flammable, explosive, and incompatible chemicals.  Explosions, fires, and toxic gasses generally pose the greatest threats to law enforcement officers executing search warrants at methamphetamine manufacturing sites.  It is not uncommon for methamphetamine manufacturers to panic when they become aware of a law enforcement presence at a methamphetamine manufacturing site.  As a result of their panic, methamphetamine manufacturers have been known to attempt to dispose of evidence of their manufacturing by throwing/pouring chemicals into toilets, bathtubs, and sinks before law enforcement can gain entry and secure the premises.  The pouring/mixing of the various chemicals during the attempted disposal creates an increased risk of explosion, fire, and toxic gas exposure due to the nature of the chemicals involved.  This affiant believes that the above presents reasonable suspicion that knocking and announcing the presence of law enforcement officers at the time of the execution of this search warrant would prove dangerous to the law enforcement officers involved in the execution of the search warrant.

16. Justin Whitehead's known residence is 18278 Brumley Gap Road, Abingdon, VA (located within the Western District of Virginia).

17. Based upon the facts set forth above, I believe that there is probable cause for the issuance of a search warrant for the premises known as 18278 Brumley Gap Road, Abingdon, VA as there is probable cause to believe that there is evidence of a violation of  21 USC 846/841(a)(1) and/or 841(a)(1) at said premises.

Brian Snedeker, Special Agent (DEA)

6-19-2014

Date

Subscribed and sworn to before me, this the _19th_ day of _June 2014_
in Abingdon, Virginia.

Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia